**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Remedial (Cyprus) Public Company Ltd., | Case No. 10-10782 (REG) |
| Debtor. | |

**ORDER UNDER 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006, AND 9014 (A) AUTHORIZING AND APPROVING (I) SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES; AND (B) APPROVING RELATED COMPROMISES**

Upon the motion (the "**Motion**")[1] of the debtor and debtor-in-possession (the "**Debtor**" or "**Seller**") in the above-captioned case for orders: (a) authorizing the Debtor to sell all or substantially all of its assets to the Debtor's existing secured bondholders or their nominee (the "**Stalking Horse Bidder**"), subject to higher and better offers; (b) approving bidding procedures; (c) scheduling an auction and a sale hearing; and (d) granting related relief; and the Court having reviewed the Motion; and the Court having entered on March 15, 2010, that certain Order Under 11 U.S.C. § 105(a) And Fed. R. Bankr. P. 2002, 6004, 6006 And 9014 (I) Approving Bidding Procedures; (II) Scheduling Auction And Sale Hearing; and (III) Granting Related Relief (Docket No. 53) (the "**Bidding Procedures Order**"); the objection filed by Swedbank having been resolved pursuant to the letter agreement attached hereto as Exhibit "B"; and upon the record of the sale hearing (the "**Sale Hearing**") conducted on May 26, 2010; and upon the record of this chapter 11 case; and the Debtor and the Stalking Horse Bidder having reviewed and agreed to the terms of this Order; and it appearing that the relief sought by the Debtor, as

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the APA as defined herein.

modified by this Order, is necessary and in the best interests of the Debtor, its creditors and bankruptcy estate and other parties in interest; and after due deliberation, and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND DETERMINES THAT:** [2]

A. On February 17, 2010, (the "**Petition Date**"), the Debtor filed a voluntary petition for reorganization under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

B. Since the Petition Date, the Debtor has continued in possession and management of its assets and properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C. No trustee, examiner, or Official Committee of Unsecured Creditors has been appointed in the Debtor's chapter 11 case.

D. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

E. The statutory predicates for the relief sought in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014.

F. As evidenced by the certificates of service previously filed with the Court, and based on the representations of counsel for the Debtor at the Sale Hearing: (a) proper, timely, adequate and sufficient notice of the Motion and the Sale Hearing has been provided in

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.

accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Fed. R. Bankr. P. 2002, 6004, 6006, 9007 and 9014, and the Bidding Procedures Order; (b) such notice was good and sufficient and appropriate under the particular circumstances; and (c) no other or further notice of the Motion, the Sale Hearing or the entry of this Order is required.

G.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities.

H.  The Seller is the sole and lawful owner of the Assets to be sold pursuant to the APA.

I.  Pursuant to the Bidding Procedures Order, competing offers to purchase the Assets had to be submitted by April 9, 2010. No competing offer was submitted. Therefore, pursuant to the Bidding Procedures Order, the Debtor did not conduct an auction.

J.  The offer of the Stalking Horse Bidder to purchase the Assets is the highest and best offer received for the sale of the Assets.

K.  The Stalking Horse Bidder's credit bid pursuant to the Asset Purchase Agreement, in the form annexed hereto as Exhibit "A" (the "**APA**"), is valid pursuant to sections 363(b) and 363(k) of the Bankruptcy Code.

L.  The purchase price to be paid by the Stalking Horse Bidder is fair and constitutes reasonably equivalent value and reasonable market value for the Assets.

M.  The Stalking Horse Bidder is a good faith purchaser of the Assets, within the meaning of section 363(m) of the Bankruptcy Code. The APA was negotiated and proposed by

the parties in good faith, at arm's length and without collusion, and the Stalking Horse Bidder therefore is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to this Order. Neither the Debtor nor the Stalking Horse Bidder have engaged in any conduct that would cause or permit the APA to be voided under section 363(n) of the Bankruptcy Code.

N. Except as specifically provided in the APA or this Order, the Stalking Horse Bidder shall not assume or become liable for any liens, claims, interests and/or encumbrances relating to the Assets being sold by the Seller unless expressly stated in the APA or this Order.

O. The Debtor has articulated sound business reasons for entering into the APA and selling the Assets as set forth in the Motion outside of a chapter 11 plan, and it is a reasonable exercise of the Debtor's business judgment to execute, deliver and consummate the APA with the Stalking Horse Bidder and consummate the transactions contemplated by the APA and as set forth in this Order.

P. The Seller may sell the Assets free and clear of all liens, claims, interests and/or encumbrances because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. The Assets are not encumbered by any liens, claims, interests and/or encumbrances. No party asserted any liens, claims, interests and/or encumbrances in or to the Assets. The only party that objected to the Motion and the sale of the Assets, Swedbank AB, has resolved its objection and the objection is withdrawn. Thus, any such party is deemed to have consented to the sale and the Motion pursuant to section 363(f)(2) of the Bankruptcy Code.

Q. The terms and conditions of the APA, including the total consideration to be realized by the Seller pursuant to the APA, are fair and reasonable, and the transactions

-4-

A/73391922.1

contemplated by the APA, as modified by this Order, are in the best interests of the Debtor, its creditors and estate.

R. A valid business purpose exists for approval of the transactions contemplated by the Motion pursuant to sections 105, 363(b), (f), and (m) of the Bankruptcy Code. The Seller may sell, transfer and assign the Assets free and clear of all liens, claims, interests and/or encumbrances in accordance with sections 105 and 363 of the Bankruptcy Code. As a condition to purchasing the Assets, the Stalking Horse Bidder requires that: (a) the Assets be sold free and clear of all liens, claims, encumbrances, options, rights of first refusal and other interests; and (b) the Stalking Horse Bidder shall have no liability whatsoever for any obligations of or claims (including, without limitation, as defined in section 101(5) of the Bankruptcy Code) against the Seller except those expressly assumed in the APA or by this Order. The Stalking Horse Bidder would not enter into the APA and consummate the transactions contemplated by the APA, thus adversely affecting the Debtor's estate, if the sale to the Stalking Horse Bidder was not free and clear of all such liens, claims, encumbrances, options, rights of first refusal and other interests or if the Stalking Horse Bidder was or would be liable for any such obligations of or claims (including, without limitation, as defined in section 101(5) of the Bankruptcy Code) against the Seller, except as otherwise explicitly provided in the APA or this Order.

S. The transfers of the Assets to the Stalking Horse Bidder are or will be legal, valid and effective transfers of the Assets, and will vest the Stalking Horse Bidder with all right, title and interest in and to the Assets, free and clear of all liens, claims, interests and/or encumbrances, except those explicitly and expressly excluded by the Stalking Horse Bidder in the APA or this Order.

T. A valid business purpose exists for approval of the assumption and assignment of the Assumed Contracts by the Seller to the Stalking Horse Bidder in accordance with section 365 of the Bankruptcy Code.

U. The requirements of sections 363(b) and 363(f) of the Bankruptcy Code and any other applicable law relating to the sale of the Assets have been satisfied.

V. The Court takes judicial notice of the record in this case including, without limitation, the Bidding Procedures Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

**A. Sale of Assets Approved; Transactions Authorized.**

1. The Motion is granted.

2. All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits and denied; *provided*, *however*, that the foregoing shall not apply to any reservation of rights set forth or otherwise acknowledged in this Order.

3. The Motion, APA and the transactions contemplated thereby are approved as modified by this Order, and the Seller is hereby authorized and empowered to enter into, and to perform its obligations under, the APA and such other agreements and documents to be entered into as contemplated therein or customary thereto, and to act as necessary to effectuate the terms thereof, without further corporate authorization or Order.

4. The Seller is hereby authorized and empowered, pursuant to sections 105 and 363(b) and (f) of the Bankruptcy Code, to sell the Assets to the Stalking Horse Bidder pursuant to and in accordance with the terms and conditions of the APA and this Order; and pursuant to

sections 105 and 363 of the Bankruptcy Code, title to the Assets shall pass to the Stalking Horse Bidder (and/or its designated subsidiaries) at a Closing and, if required, a Subsequent Closing, free and clear of any and all liens (including mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), security interests, encumbrances and claims (including, but not limited to, any "claim" as defined in section 101(5) of the Bankruptcy Code), reclamation claims, mortgages, deeds of trust, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, instruments, contracts, leases, licenses, options, rights of first refusal, rights of offset, recoupment, rights of recovery, judgments, orders and decrees of any Court or foreign or domestic governmental entity, claims for reimbursement, contribution, indemnity or exoneration, assignment, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, causes of action and claims, to the fullest extent of the law, in each case whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown, whether arising prior to, on, or subsequent to the Petition Date and through the Closing Date and, if required, a Subsequent Closing, whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "**Liens and Claims**"), with all such Liens and Claims upon the Assets to be unconditionally released, discharged and terminated.

5. The Seller and the Stalking Horse Bidder are authorized to modify, amend and/or supplement the APA to conform to the terms of this Order and any modifications stated on the record at the Sale Hearing.

### B. Transfer Of The Assets To Stalking Horse Bidder.

6. The transfers of the Assets to the Stalking Horse Bidder (and/or its designated subsidiaries) pursuant to the APA constitute legal, valid and effective transfers and shall vest the Stalking Horse Bidder (and/or its designated subsidiaries) with all right, title and interest of the Seller in and to the Assets so transferred.

7. This Order and the APA shall be binding upon, and shall inure to the benefit of, the Seller and the Stalking Horse Bidder and their respective successors and assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Seller or any trustee appointed in a chapter 7 case if the Debtor's case is converted from chapter 11.

8. On the Closing Date and, if required, a Subsequent Closing Date, each of the creditors of the Debtor is authorized and directed to execute such documents and take all other actions as may be necessary to release its Liens and Claims against or in the Assets, if any, as such Liens and Claims may have been recorded or may otherwise exist.

9. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Liens and Claims against or in the Assets shall not have delivered to the Debtor prior to the Closing Date and, if required, a Subsequent Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and releases of all Liens and Claims that the person or entity has with respect to the Assets, the Debtor is hereby authorized and directed, and the Stalking Horse Bidder is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets.

10. Effective upon the Closing Date and, if required, a Subsequent Closing Date, all parties and/or entities asserting Liens and Claims against the Seller and/or any of the Assets are

hereby permanently enjoined and precluded from, in each case only with respect to such Liens and Claims: (a) asserting, commencing or continuing in any manner any action against the Stalking Horse Bidder or any of its affiliates or subsidiaries or any of their respective current or former directors, trustees, officers, employees, agents or representatives (collectively, the "**Protected Parties**") or against any Protected Party's assets or properties, including without limitation the Assets; (b) the enforcement, attachment, collection or recovery, by any manner or means, of any judgment, award, decree or order against the Protected Parties or any properties or assets of the Protected Parties, including without limitation the Assets; (c) creating, perfecting or enforcing any encumbrance of any kind against the Protected Parties or any properties or assets of the Protected Parties, including without limitation the Assets; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Protected Parties; and (e) taking any action, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Order or the APA.

11. The provisions of this Order authorizing the sale of the Assets free and clear of Liens and Claims shall be self-executing, and neither the Seller, the Stalking Horse Bidder nor any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale; provided, however, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under the APA or this Order. Without in any way limiting the foregoing, the Stalking Horse Bidder is empowered to execute and file releases, termination statements, assignments, consents, cancellations or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale.

12. Consummation of the APA and the transactions contemplated therein and thereby will not effect a *de facto* merger or consolidation of the Seller and the Stalking Horse Bidder or result in the continuation of the Seller's business under the Stalking Horse Bidder's control.

13. All entities which are presently, or on the Closing Date and, if required, the Subsequent Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Stalking Horse Bidder on the Closing Date and, if required, the Subsequent Closing Date, unless otherwise agreed by the Stalking Horse Bidder and any such entity, or unless doing so would be contrary to the terms of an Assumed Contract.

C. **Assumption And Assignment Of Assumed Contracts Authorized.**

14. The requirements of section 365(b) of the Bankruptcy Code having been satisfied, the Seller is hereby authorized and empowered to sell and assume and assign the Assumed Contracts[3] to the Stalking Horse Bidder (and/or its designated subsidiaries) under the APA free and clear of all Liens and Claims pursuant to sections 363 and 365 of the Bankruptcy Code.

15. Pursuant to section 365(k) of the Bankruptcy Code, effective as of the Closing and, if required, the Subsequent Closing, the Seller shall be relieved from any further obligations under or related to the Assumed Contracts for periods after the Closing Date and, if required, Subsequent Closing Date, and the Stalking Horse Bidder shall assume and be obligated to pay, honor and discharge when due all Assumed Liabilities, including but not limited to all Assumed Liabilities in respect of the Assumed Contracts. If the Closing or the Subsequent Closing does not occur, then the Assumed Contracts shall be and remain property of the Seller, and the rights of counterparties to Assumed Contracts as and against the Seller in respect of such Assumed Contracts, under the Bankruptcy Code and any other applicable law, shall remain in full force

---

[3] As listed in Debtor's Second Amended Notice of Assignment and Cure Amounts With Respect to Executory Contracts and Unexpired Leases [Docket No. 111] or as otherwise amended in accordance with the APA.

and effect. If the Closing or the Subsequent Closing does occur, then the rights of counterparties to Assumed Contracts, under the Bankruptcy Code and any other applicable law, as and against the Seller in respect of such Assumed Contracts shall be enforceable against the Stalking Horse Bidder, to the extent provided by applicable law and required by the APA.

### D. Good Faith Purchase.

16. The purchase by the Stalking Horse Bidder is a purchase in good faith for fair value within the meaning of section 363(m) of the Bankruptcy Code, and the Stalking Horse Bidder is entitled to all of the protections afforded good faith purchasers by section 363(m) of the Bankruptcy Code.

17. The sale approved by this Order is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code. The consideration provided by the Stalking Horse Bidder for the Assets under the APA shall be deemed to constitute reasonably equivalent value and fair consideration.

### E. Maintenance of Financial Records; Access Thereto.

18. Notwithstanding anything to the contrary contained in the APA, all financial books and records of Seller which remain in the possession of the Stalking Horse Bidder (and/or its designated subsidiaries) after the Closing Date and the Subsequent Closing Date (the "**Financial Records**"), are subject to the right of the Debtor and any subsequently appointed trustee (including without limitation a trustee appointed pursuant to a plan of reorganization to liquidate the Debtor's remaining assets) to review and copy the Financial Records, at the Debtor's and such trustee's sole cost and expense and to the extent reasonably necessary to administer the Debtor's estate, during normal business hours and upon reasonable notice until the date the Debtor's bankruptcy case are closed or dismissed by Order of the Court.

19. The Stalking Horse Bidder agrees that prior to destroying or otherwise disposing of any of the Financial Records, the Stalking Horse Bidder (and/or its designated subsidiaries) shall provide written notice to the Debtor (as provided for in the APA) or any trustee appointed, of its intent to dispose of or destroy the Financial Records. The Debtor or any Court-appointed trustee shall have thirty (30) days from the date notice is given to take possession of or copy the Financial Records, at their sole cost and expense.

**F.     Additional Decretals.**

20. The recitals and findings of facts set forth above are hereby incorporated as a part of this Order.

21. As provided by Fed. R. Bankr. P. 6004(h), 6006(d) and 7062, this Order shall be effective and enforceable immediately upon entry.

22. The provisions of this Order are nonseverable and mutually dependent.

23. Nothing contained in any plan of reorganization (or liquidation) confirmed in this case or the order of confirmation confirming any such plan shall conflict with or derogate from the provisions of the APA or the terms of this Order.

24. This Order shall be binding upon and inure to the benefit of the Debtor, the Stalking Horse Bidder, and each of their respective former, present, and future assigns, predecessors, successors, affiliates, parent companies, subsidiaries, controlled companies, employees, officers, directors, shareholders, principals, members or agents, whether a signatory hereto or not, including, but not limited to, any subsequently appointed trustee (including without limitation a chapter 7 trustee).

25. This Court shall retain exclusive jurisdiction to enforce the provisions of this Order and the APA and to resolve any dispute concerning this Order, the APA, or the rights and

-12-
A/73391922.1

duties of the parties hereunder or thereunder or any issues relating to the APA and this Order, including, but not limited to, interpretation of the terms, conditions and provisions thereof, and the status, nature and extent of the Assets, and all issues and disputes arising in connection with the relief authorized herein (including relating to Cure Amounts to be paid under this Order and the APA), inclusive of those concerning the transfer of the Assets free and clear of Liens and Claims, but excluding issues and disputes concerning the enforcement, after the Closing or Subsequent Closing, by a counterparty to an Assumed Contract of any rights such counterparty may have, first arising on or after the Closing Date or Subsequent Closing Date as applicable, in respect of an Assumed Contract as and against the Stalking Horse Bidder or a Vessel.

26. The Debtor and the Stalking Horse Bidder expressly understand and agree that the APA and this Order, together, constitute the entire understanding and agreement between the parties, and supersede and replace all other prior negotiations, agreements or understandings between the parties, whether written or oral, relating to the subject matter hereof. Each of the parties acknowledges and represents that no other party or agent or attorney of any other party has made a promise, representation, or warranty whatsoever, express or implied, not contained herein concerning the subject matter of the APA or this Order. Each party acknowledges and represents that it has not agreed to this Order in reliance upon any promise, representation or warranty whatsoever not expressly set forth in the APA or this Order.

27. The division of this Order into sections or other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Order.

28. Each person signing this Order as an agent or representative of any party hereby covenants and warrants to the Court and the other parties that he or she is fully authorized to sign

this Order on behalf of the party he or she represents and is fully authorized to bind that Party to all of the terms of this Order.

**Agreed To By:**

Dated: May 27, 2010                 **REMEDIAL (CYPRUS) PUBLIC COMPANY LTD.**
*Debtor and Debtor in Possession*

By:  /s/ Scott Cargill
Kenneth A. Rosen, Esq.
John K. Sherwood, Esq.
Scott Cargill, Esq.
**LOWENSTEIN SANDLER PC**
1251 Avenue of the Americas, 18th Floor
New York, New York  10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey  07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

Dated: May 27, 2010                 **NORSK TILLITSMANN ASA**
*Stalking Horse Bidder*

By  /s/ Steven Wilamowsky, Esq.
**BINGHAM MCCUTCHEN LLP**
399 Park Avenue
New York, NY  10022-4689
(212) 705-7960 (Telephone)
(212) 702-3607 (Facsimile)

**THE FOREGOING IS HEREBY ORDERED:**
Dated: *__May 27, 2010__*
     New York, New York
*__s/ Robert E. Gerber__*
United States Bankruptcy Judge