**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq.
John K. Sherwood, Esq.
Scott Cargill, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Remedial (Cyprus) Public Company Ltd., | Case No. 10-10782 (REG) |
| Debtor. | |

### MOTION TO AMEND THE FINAL DIP ORDER

The above-captioned debtor and debtor in possession (the "**Debtor**"), by and through its undersigned counsel, submits this motion to amend the Final DIP Order (defined below) (the "**Supplemental DIP Motion**") to increase the total drawdown amount from $5 million to $6.5 million. In support of the Supplemental DIP Motion, the Debtor respectfully represents as follows:

### RELIEF REQUESTED

1. By this Supplemental DIP Motion, as more specifically set forth in below, and subject in all respects to the DIP Final Order and the DIP Amendment (both defined below), the Debtor requests an order (a) amending the Final DIP Order to increase the total maximum

drawdown amount under the DIP Facility (defined below) from $5 million to $6.5 million; (b) authorizing the Debtor to obtain postpetition financing, grant security interests and liens and accord priority status pursuant to 11 U.S.C. §§ 361, 364(c) and 364(d); (c) authorizing the use of cash collateral pursuant to 11 U.S.C. § 363(c)(2)(b); (d) granting adequate protection; and (e) modifying the automatic stay pursuant to 11 U.S.C. § 362(d).

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334, which is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 361, 362, 363, and 364(c) and (d) and Federal Rule of Bankruptcy Procedure 4001.

## BACKGROUND

**The Prior DIP Orders**

4. On February 17, 2010 (the "**Petition Date**") the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

5. On February 19, 2010, this Court held a hearing on the Debtor's first-day motions, including the Debtor's Motion for Interim and Final Orders (I) Authorizing the Debtor to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1), and 364(e); and (B) Utilize Cash Collateral of Prepetition Secured Parties; (ii) Granting Adequate Protection to Prepetition Secured Parties; (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (IV) Granting Related Relief (the "**DIP Motion**") [Docket No. 5].

6. The DIP Motion sought approval of a multiple draw DIP term loan of up to $5 million as postpetition secured financing (the "**DIP Loan**"), which the Debtor's secured bondholders, represented by the loan trustee Norsk Tillitsmann (together, the "**Bondholders**") agreed to provide.

7. On February 22, 2010, this Court entered an order approving the DIP Motion on an interim basis and authorizing the Debtor to draw up to $1.5 million of the $5.0 million in requested financing (the "**First Interim DIP Order**") [Docket No. 13].

8. On March 15, 2010, this Court entered a second interim order authorizing the Debtor to draw up to the full $5 million under the financing facility (the "**Second Interim DIP Order**"). The Second Interim Order automatically converted to a final order if Swedbank AB, an unsecured creditor ("**Swedbank**"), failed to file a motion by March 31, 2010 seeking to prevent the Second Interim DIP Order from becoming a final order. No such motion was timely filed by Swedbank and the Second Interim DIP Order became a final order by its own terms on March 31, 2010 (the "**Final DIP Order**") [Docket No. 54].[1]

9. The Debtor has been using the postpetition financing to continue operating its business in the ordinary course, in accordance with the budget submitted with the DIP Motion, as amended by the Debtor and the Bondholders. The postpetition financing is predominantly being used to complete the construction of two Elevating Support Vessels, which are state of the art, stable offshore work platforms specifically designed to support remedial oil and gas activities (the "**ESVs**" or "**Vessels**"). One of the vessels has just completed construction by Cosco (Nantong) Shipyard Co. Ltd. ("**Cosco**") and the other vessel is currently under construction by Yantai Raffles Shipyard Limited ("**Yantai**").

**The Pending Sale of the Debtor's Assets**

10. On February 26, 2010, the Debtor filed its Motion for the Entry of Orders (A) Authorizing the Debtor to Sell Substantially All of Its Assets to a Stalking Horse Bidder Subject to Higher and Better Offers, (B) Approving Bidding Procedures, (C) Scheduling Auction and Sale Hearing and (D) for Related Relief (the "**Sale Motion**") [Docket No. 21].

11. The Sale Motion contemplates that, subject to higher and better offers, the Bondholders, through an assignee or nominee of the Bondholders (the "**Stalking Horse**

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Final DIP Order.

-3-

**Bidder**"), will purchase substantially all of the assets of the Debtor for a price equal to the sum of: (i) a $120 million credit bid; and (ii) the cost to cure any leases or executory contracts to be assumed by the Debtor and assigned to the Stalking Horse Bidder. *See* Sale Motion, ¶ 26. The proposed terms of the transaction contemplated by the Debtor and the Bondholders are set forth in a draft asset purchase agreement ("**APA**") attached as an exhibit to the Sale Motion.

12. At a hearing held on March 10, 2010, the Court approved the bidding procedures proposed in the Sale Motion. The Court also set the bidding deadline on April 9, 2010, scheduled an auction on April 12, 2010 and a sale hearing on April 22, 2010. [Docket No. 53].

13. Despite the diligent efforts of the Debtor's broker, Clarkson Offshore, to attract competing bidders, no competing bid was submitted by the bidding deadline. The Debtor anticipated going forward with the sale hearing on April 22, 2010, to authorize the sale of the Debtor's assets to the Stalking Horse Bidder.

14. On April 9, 2010, Swedbank filed a motion seeking the Court's authorization to pursue alleged causes of action against the Bondholders on behalf of the Debtor's estate (the "**Standing Motion**") [Docket No. 80]. On April 29, 2010, the Debtor and the Bondholders filed objections to the Standing Motion [Docket Nos. 103 & 106].

15. On April 15, 2010, Swedbank filed an objection (the "**Sale Objection**") to the sale of substantially all of the Debtor's assets to the Stalking Horse Bidder, arguing, among other things, that the Bondholders, through the Stalking Horse Bidder, could not credit bid while the Standing Motion, and any resulting challenge to the Bondholders' liens on the Debtor's assets, was pending before the Court.

16. Through the later part of April and the month of May, the Debtor, the Bondholders and Swedbank entered into negotiations to reach an agreement that would pave the way for a consensual path to the sale of the Debtor's assets.

17. As a result of the Sale Objection, the Standing Motion and ongoing negotiations among the parties, the sale hearing was adjourned a first time to April 28, 2010 [Docket No. 97], a second time to May 12, 2010 [Docket No. 101], and a third time to May 26, 2010 [Docket No.

108].

18. The Bondholders and Swedbank eventually reached a settlement, detailed in a letter agreement attached to the Notice of Proposed Order [Docket No. 118], which allowed the sale hearing to go forward on a consensual basis on May 26, 2010.

19. On May 27, 2010, the Court entered an order authorizing the sale of the Debtor's assets to the Bondholders, pursuant to the terms of a revised APA (the "**Revised APA**") attached to order [Docket No. 120]. The Debtor continues to work closely with the Bondholders to close on the sale of the Debtor's assets. Certain variables, discussed in greater detail below, may delay the closing date or, alternatively, require that the closing take place as a two-step process.

**The Amended DIP Facility**

20. At the outset of this chapter 11 case, the $5 million DIP Loan was intended to provide funding for the Debtor from the Petition Date through the beginning of May 2010 (i.e., a short period after the originally scheduled sale hearing on April 22, 2010). Due to the Sale Objection, the Standing Motion and the ongoing negotiations among the parties to resolve the issues relating to the sale on a consensual basis, the sale hearing was adjourned several times from April 22, 2010 to May 26, 2010. The resulting delay has forced the Debtor to incur costs and expenses that were originally anticipated to be paid by the purchaser of the Debtor's assets. As a result, the Debtor will exhaust the financing provided under the DIP Loan in the near future.

21. Although the Debtor managed its cash conservatively during this chapter 11 case, the Debtor used and will need to continue to use the financing for necessary payments to be made to the various contractors, consultants, engineers and subsidiary employees hired to construct the ESVs up to the date, or dates, for the closing of the sale of the Debtor's assets to the Bondholders.

22. The delay, and the ensuing exhaustion of the original DIP Loan, has been caused by events outside of the Debtor's control. The sale of the Debtor's assets was delayed, among other things, because of Swedbank's Standing Motion and Sale Objection. The Debtor and the

Bondholders conducted negotiations with Swedbank to resolve the issues raised by Swedbank, which only reached a resolution shortly before the May 26, 2010 sale hearing.

23. The sale closing may be further delayed, or bifurcated, in part due to a dispute with the builder of one of the Vessels. As disclosed during the sale hearing, Yantai issued a letter in April 2009 purporting to terminate its contract with the Debtor to build one of the ESVs.[2] The Yantai contract is among the assets to be conveyed to the Bondholders as part of the sale transaction. The Debtor and the Bondholders have been in negotiations with Yantai in an attempt to resolve Yantai's purported termination of the contract and allow the contract to be assigned to the Bondholders on a consensual basis, along with the Debtor's other assets, pursuant to the terms of the Revised APA.

24. The Revised APA allows for the Bondholders to close on certain assets before closing on the Yantai-related assets, as well as the ability to not purchase the Yantai-related assets or the equity interests in the Debtor's subsidiaries.

25. In light of these unavoidable delays, the Debtor must now obtain an increase in the amount available under the Final DIP Order in order to allow the Debtor to continue to pay its necessary obligations in connection with its operations prior to the closing date.

26. Additionally, the Debtor requires the additional funding in order to conclude this bankruptcy case either through a plan, a structured dismissal with an orderly wind down, or other relief available to the Debtor. The Debtor intends to use the additional funding to ensure that certain administrative claims are paid, including U.S. trustee quarterly fees and other bankruptcy fees and expenses.

27. The Bondholders have agreed to increase the amount available under the DIP Facility by an additional $1.5 million, for a total amount of $6.5 million (the "**Amended DIP Facility**"). If approved by this Court, the additional funds under the Amended DIP Facility will be drawn in five (5) weekly installments of up to $300,000 starting on or about the week of June

---

[2] The Debtor reserves all of its rights and remedies against Yantai in connection with this purported termination.

27, 2010 based on a budget mutually agreed upon by the Bondholders and the Debtor. The DIP Credit Agreement and the Term Sheet have been amended in accordance with the First Amendment to Senior Secured Super-Priority Debtor-In-Possession Credit Agreement (the "**DIP Amendment**")[3], which is attached hereto as **Exhibit A**. All other terms of the DIP Loan, as may have been amended or waived as provided under the DIP Loan by consent of the parties, will remain unchanged. Except as set forth in the proposed order attached as **Exhibit B** to this Supplemental DIP Motion, there would be no other substantive changes to the Final DIP Order.

## BASIS FOR RELIEF

28. The Debtor submits that approval of the Amended DIP Facility and the Supplemental DIP Motion are supported by sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of the Bankruptcy Code, Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York.

## NEED FOR IMMEDIATE RELIEF

29. The Final DIP Order already approved the DIP Facility on a final basis. The Amended DIP Facility only increases the amount of postpetition financing available to the Debtor. Therefore, Federal Rule of Bankruptcy Procedure 4001(c) does not apply. Even if that Rule applies, the Debtor submits that it will be irreparably and immediately harmed if the relief requested in this Supplemental DIP Motion is not effective immediately upon the entry of the proposed order.

## NOTICE

30. Notice of this Supplemental DIP Motion has been given to (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the

---

[3] On June 11, 2010, the Bondholders summoned a meeting of the Bondholders to authorize the DIP Amendment. The meeting will take place on June 21, 2010, wherein the Bondholders will consider the DIP Amendment and whether to fund the additional $1.5 million in accordance with the terms of the DIP Amendment. This Motion, and the relief requested herein, is conditioned upon the Bondholders authorizing the DIP Amendment and agreeing to fund the additional $1.5 million in accordance with the terms of the DIP Amendment.

Office of the United States Attorney for the District of New York; (iv) the Internal Revenue Service; (v) the Debtor's consolidated twenty (20) largest unsecured creditors; (vi) Norsk Tillitsmann ASA, trustee for the Debtor's secured bondholders; (vii) the Debtor's financial institutions; and (viii) all parties who entered a notice of appearance and request for service of pleading pursuant to Federal Rule of Bankruptcy Procedure 2002. The Debtor respectfully submits that such notice is sufficient, and request that this Court find that no further notice of the relief requested herein is required

## **NO OBJECTIONS**

31. Prior to filing this motion with the Court, the Debtor submitted this Supplemental DIP Motion to counsel for the Bondholders, Swedbank, and the United States Trustee, all of whom have indicated that they do not object to the relief requested herein.

## **PRIOR REQUEST**

32. This Supplement amends the DIP Motion filed on February 3, 2010.

## **WAIVER OF BRIEF**

33. The Debtor submits that the Supplemental DIP Motion does not present novel issues of law requiring the citation to any authority other than that referred to above and in the DIP Motion and, accordingly, no separate memorandum of law is necessary.

[Remainder of page intentionally left blank]

Dated:  June 14, 2010

**LOWENSTEIN SANDLER PC**

/s/ *Scott Cargill*
Kenneth A. Rosen, Esq.
John K. Sherwood, Esq.
Scott Cargill, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York  10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey  07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Counsel to the Debtor and Debtor in Possession*

**EXHIBIT A**

**DIP Amendment**

# FIRST AMENDMENT TO SENIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT

This **FIRST AMENDMENT** (this "Amendment") to (a) the **SENIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT** dated as of February 19, 2010 (the "Credit Agreement"), by and among Remedial (Cyprus) Public Company Limited, a public company organized under the laws of Cyprus, as debtor and debtor-in-possession (the "Borrower"), and Norsk Tillitsmann ASA, as Loan Trustee on behalf of the bondholders in the FRN Remedial (Cyprus) Public Company Limited Secured Callable Bond Issue 2007/2012 with ISIN No. 001 036034.0 (the "Lender") and (b) that certain Term Sheet attached to the Credit Agreement as Exhibit A (as amended by the Second Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (1) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, and (5) Modifying Automatic Stay of the Bankruptcy Court dated March 15, 2010, the "Term Sheet"), is dated as of June [__], 2010 and amends certain provisions of the Credit Agreement and the Term Sheet.

      A.      WHEREAS, the Borrower and the Lender desire to amend certain provisions of the Credit Agreement and the Term Sheet, as provided more fully herein.

      B.      Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Credit Agreement, as amended hereby.

Accordingly, in consideration of the mutual agreements herein contained and other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties hereto agree as follows:

      SECTION 1.    AMENDMENTS TO CREDIT AGREEMENT.

      (a)    Section 2 of the Credit Agreement is hereby amended by, deleting the amount "$5,000,000" contained in the first sentence thereof and replacing it with the amount "$6,500,000".

      (b)    Section 2 is hereby further amended by adding the following text immediately at the end of such Section: "Any advances under the Term Loan in excess of the initial $5,000,000.00 advanced hereunder shall be used in accordance with the budget mutually agreed among advisors to the Borrower and advisors to the Lender and shall be advanced to the Borrower in amounts not to exceed $300,000.00 in the aggregate on a weekly basis as required and to the extent such advances are authorized. The Borrower shall be authorized immediately upon approval of the United States Bankruptcy Court for the Southern District of New York of the Borrower's entry into the Amendment to borrow up to $300,000 hereunder."

      SECTION 2.    AMENDMENTS TO TERM SHEET (a) The definition of "Facility" contained therein is hereby amended by deleting the amount "$5,000,000" contained in the first sentence thereof and replacing it with the amount "$6,500,000".

(b) Immediately following the Section entitled "Condition to Fourth Extension of Credit" the following Section shall be inserted:

| **Conditions to Fifth through Ninth Extensions of Credit** | The incremental extensions of credit, each individual extension of credit not to exceed $300,000 in the aggregate, shall be available on a weekly basis on each Monday following the date on which the Bankruptcy Court approves that certain First Amendment (this "<u>Amendment</u>") to the Senior Secured Super-Priority Debtor-In-Possession Credit Agreement dated as of February 19, 2010 (the "<u>Credit Agreement</u>"), and in accordance with the Budget. |
|---|---|

SECTION 3. <u>REPRESENTATIONS AND WARRANTIES</u>. TO INDUCE THE OTHER PARTIES HERETO TO ENTER INTO THIS AMENDMENT, THE PARTIES REPRESENT AND WARRANT TO THE LENDER THAT, AS OF THE EFFECTIVE DATE:

(a) <u>Existence</u>. The Borrower: (a) is duly organized and validly existing under the laws of the jurisdiction of its organization; and (b) has all requisite power and authority and all requisite governmental licenses, authorizations, consents and approvals to (i) own or lease its assets and carry on its business and (ii) execute, deliver and perform its Obligations hereunder and under the Loan Documents to which it is a party.

(b) <u>No Conflicts</u>. The execution, delivery and performance by the Borrower of its Obligations hereunder and under each other Loan Document to which the Borrower is or is to be a party have been duly authorized by all necessary corporate or other organizational action, and do not and will not: (a) contravene the terms of the Borrower's constitutive documents; (b) conflict with or result in any breach or contravention of, or the creation of any lien under, or require any payment to be made under (i) any contractual obligation to which the Borrower is a party or affecting the Borrower or the properties of the Borrower or any of its subsidiaries or (ii) any order, injunction, writ or decree of any governmental authority or any arbitral award to which the Borrower or its property is subject; or (c) violate any law.

(d) <u>Consents</u>. Except for the entry of the Final Order, and except as expressly contemplated hereunder or in any other Loan Documents, no consent, approval, authorization or order of, and no notice to or filing with, any governmental authority or third party is required in connection with the execution, delivery or performance by the Borrower of any Loan Document or to consummate any transactions contemplated hereby or thereby.

(e) <u>Enforceability</u>. This Agreement has been, and each other Loan Document, when delivered hereunder, will have been, duly executed and delivered by the Borrower. This Agreement constitutes, and each other Loan Document when so delivered will constitute and shall remain, a legal, valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms.

(f) <u>Material Adverse Change</u>. Except for the filing of the Chapter 11 Case, no event that has had or could reasonably be expected to have a Material Adverse Change has occurred

and is continuing. The Borrower is not aware of any event likely to occur that is reasonably expected to result in a Material Adverse Change.

SECTION 4. <u>CONDITIONS OF EFFECTIVENESS OF AMENDMENT</u>. THE EFFECTIVENESS OF THIS AMENDMENT AND THE OCCURRENCE OF THE EFFECTIVE DATE ARE SUBJECT TO THE SATISFACTION OF THE FOLLOWING CONDITIONS:

(a) The Amendment shall have been executed and delivered by: (i) a duly authorized officer of the Borrower; and (ii) the Lender.

(b) No Default or Event of Default under the Credit Agreement and other Transaction Documents shall have occurred and be continuing as of the Effective Date except for any Default or Event of Default waived by the parties in accordance with the Credit Agreement. The representations and warranties in this Amendment, in the Credit Agreement and in the other Transaction Documents shall be true and correct in all material respects, except to the extent such representations and warranties specifically relate to an earlier date, in which case such representations and warranties shall have been true and correct in all material respects on and as of such earlier date.

SECTION 5. <u>EFFECT ON TRANSACTION DOCUMENTS; ACKNOWLEDGEMENTS</u>.

(a) The Lender hereby expressly reserves all of its respective rights, remedies, and claims under the Credit Agreement and the other Transaction Documents. Nothing in this Amendment shall constitute a waiver or relinquishment of the rights of each of the Lender and the Administrative Agent to collect the full amounts owing to it under the Credit Agreement and the other Transaction Documents.

(b) The Borrower and the Lender, hereby adopt, ratify, and confirm the Credit Agreement, and each of the foregoing parties acknowledge and agree that the Credit Agreement and the other Transaction Documents are and remain in full force and effect, and the Borrower acknowledges and agrees that neither its liabilities under the Credit Agreement and the other Transaction Documents nor the validity, perfection, or priority of any lien or security interest securing the Obligations are impaired in any respect by this Amendment.

SECTION 6. <u>COUNTERPARTS</u>. THIS AGREEMENT MAY BE EXECUTED IN SEVERAL COUNTERPARTS, EACH OF WHICH SHALL BE AN ORIGINAL, AND ALL OF WHICH SHALL CONSTITUTE ONE AGREEMENT. DELIVERY OF AN EXECUTED SIGNATURE PAGE OF THIS AGREEMENT BY FACSIMILE OR ELECTRONIC (PDF) TRANSMISSION SHALL BE EFFECTIVE AS DELIVERY OF A MANUALLY EXECUTED COUNTERPART HEREOF. THE PROVISIONS OF THIS AGREEMENT ARE SEVERABLE AND IF ANY ONE PROVISION HEREOF SHALL BE HELD INVALID OR UNENFORCEABLE IN WHOLE OR IN PART IN ANY JURISDICTION, SUCH INVALIDITY OR UNENFORCEABILITY SHALL AFFECT ONLY SUCH PROVISION IN SUCH JURISDICTION.

SECTION 7. <u>APPLICABLE LAW</u>. **THIS AGREEMENT AND THE LOAN DOCUMENTS SHALL FOR ALL PURPOSES BE GOVERNED BY AND CONSTRUED**

**IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES THEREOF (OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW). EACH PARTY HERETO AGREES THAT ANY SUIT FOR THE ENFORCEMENT OF THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS, THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN THE BORROWER AND THE LENDER PERTAINING TO THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS OR TO ANY MATTER ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS.**

SECTION 8. HEADINGS. THE HEADINGS OF THIS AMENDMENT ARE FOR PURPOSES OF REFERENCE ONLY AND SHALL NOT LIMIT OR OTHERWISE AFFECT THE MEANING HEREOF.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed by their respective officers on or about June [__], 2010, to be effective as of the Effective Date.

**SIGNATURE BLOCKS**

# EXHIBIT B

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Remedial (Cyprus) Public Company Ltd., | Case No. 10-10782 (REG) |
| Debtor. | |

**ORDER AMENDING FINAL DIP ORDER**

THIS MATTER having come before the Court upon the Motion to Amend the Final DIP Order (the "**Supplemental DIP Motion**"); the Court having considered the Supplemental DIP Motion, the Final DIP Order,[1] and the DIP Documents; and the Court having entered on March 15, 2010, a second interim order authorizing the relief requested in the DIP Motion on an interim basis (the "**Second Interim Order**"); and the Second Interim Order having become final pursuant to its own terms on March 31, 2010 (the "**Final DIP Order**"); and that adequate notice of the Motion has been given and that no further notice of the Motion is necessary; and all objections, if any, to the entry of the relief requested in the Supplemental DIP Motion having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE SUPPLEMENTAL DIP MOTION, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACTS AND CONCLUSIONS OF LAW:

    A.    The findings of fact and conclusions of law in the Final DIP Order are

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Supplemental DIP Motion and the Final DIP Order [Docket No. 54].

incorporated in this order (the "**Supplemental DIP Order**") as though fully set forth herein. Based upon the foregoing findings and conclusions, the Supplemental DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1. Except as set forth below, the amendments are approved and the Final DIP Order remains in full force and effect.

2. The phrase "this Order" in the Final DIP Order shall include this Supplemental DIP Order.

3. Paragraph 4 is deleted in its entirety and replaced by the following:

> Authorization to Borrow. Until the Termination Date (as defined in the First Interim Order), and subject to the terms, conditions, and limitations on availability and reserves set forth in the DIP Documents, the First Interim Order and this Order, the Debtor is hereby authorized to borrow (in the form of a multiple draw term loan) up to an aggregate principal amount of $6.5 million.

SO ORDERED by the Court this ____ day of June 2010.

                    HONORABLE ROBERT E. GERBER
                    UNITED STATES BANKRUPTCY JUDGE